# EXHIBIT B

## AFFIDAVIT OF MELINDA POWER

STATE OF ILLINOIS )
) SS:
COUNTY OF COOK )

MELINDA POWER, being first duly sworn, on oath states:

1. I am an attorney licensed to practice in Illinois. I was attorney of record for Roberto Almodovar Jr. along with Scott Frankel until we were replaced as counsel of record by Clarence Burch.

2. On March 1, 1995, as attorney for Mr. Almodovar, I interviewed Kennelly Saez at my office located at 2048 W. Division in Chicago. I knew Mr. Saez to be one of the eyewitnesses to the shooting of Amy Merkes, Jorge Rodriguez, and Jacqueline Grande.

3. Mr. Saez came to my office with another young man. I asked Mr. Saez why he and the other man had come together. Mr. Saez told me that because my office was located in a neighborhood controlled by the Latin Kings, a rival gang, he did not want to travel alone.

4. The interview of Mr. Saez was witnessed by my sister, Margaret Power, who works as a translator in my law office.

5. Mr. Saez answered all of my questions on his own. His companion did not pass answers on to him, tell him what to say, or signal answers to him. To the best of my recollection, Mr. Saez's companion was silent throughout my interview of Mr. Saez.

6. Mr. Saez told me that he was there of his own free will and had not been pressured or threatened by anyone.

7. I prepared a statement for Mr. Saez to sign under oath

based upon what he had told me in the interview. I then read it to him out loud, then Mr. Saez read it and signed the statement. A copy of the statement is attached to this Affidavit.

8. During the time that I represented Mr. Almodovar, I also interviewed Jacqueline Grande, on April 6, 1995. Amy Myers accompanied me and was present for the interview. A copy of my notes of the interview are attached to this Affidavit.

9. Ms. Grande informed me that she had been visited in the hospital by a police officer or officers who had shown her photographs of persons and asked her if any of them had been involved in the shooting. This event was not recorded in any police report that was produced to me in discovery. Had I remained Mr. Almodovar's counsel, I would have pursued this matter through the filing of further motions.

10. Ms. Grande also informed me that when she was shown photos by the police, she was told "these are the guys who did it." I felt that this was significant in attempting to refute her apparent identification of Mr. Almodovar as one of the persons who had shot at her and the other victims.

11. As attorney for Mr. Almodovar, I also subpoenaed Ms. Grande's hospital records. These records, copies of which accompany this Affidavit, reflect that Ms. Grande was suspected of suffering from post-traumatic stress disorder ("PTSD"). We interviewed a nurse who had treated Ms. Grande at Mount Sinai Hospital, who informed us that Ms. Grande seemed very upset and depressed and cried a lot during her stay in the hospital. Because of her extreme reaction, it was thought that she might be

suffering from PTSD. It was my belief that these facts tended to undercut Ms. Grande's certainty in her identification, her susceptibility to suggestion at the time of the identification, and her ability to identify her assailants. If I had remained as Mr. Almodovar's attorney, I would have pursued the matter further.

12. When I learned that Mr. Almodovar had retained Mr. Burch as substitute counsel, I attempted to contact Mr. Burch so that I could arrange to speak with him about the case and transfer my files to him. I tried to contact Mr. Burch 3 or 4 times, but he did not return my calls. Eventually he sent someone to pick up the case file, which I turned over to him in its entirety. The file included, among other things, Mr. Saez's sworn statement, the notes of my interview with Ms. Grande and other relevant persons, Ms. Grande's medical records, and the transcript of a pretrial hearing on a motion to suppress identification, at which the facts set forth in Paragraphs 9 and 10 of this Affidavit were disclosed in court.

13. Mr. Burch never spoke with me either in person or by telephone.

Further affiant sayeth not.

_____
Melinda Power

Subscribed and sworn to
before me this 9 day
of February, 1996.

_____
Notary Public

"OFFICIAL SEAL"
CARMEN JULIA HERNANDEZ
Notary Public, State of Illinois
My Commission Expires June 16, 1999

JR-JJ 029222

ALMODOVAR_LASSAR 10730

RG 12876

FILED
APR 1995
AURELIA PUCINSKI
Clerk of the Circuit Court

JACKIE GRANDE
April 6, 1995
2:50 p.m. interview at Jewel Food Store on Lincoln
Also present: Amy Myers

JACKIE:
- -- car in front of building 10-15 seconds before shooting
- -- started shooting
- -- Jackie got up to run inside
  - -- shot in back
- -- didn't see what Kennelly was doing
  - -- he got up to walk to car
  - -- (Jackie) didn't see what he did
- -- (car) said "What's up, folks"
- -- witness said "Who's that"
- -- Kennelly goes to car
- -- shooting begins
- -- lots of light
  - -- from streetlights and building
  - -- not that dark out
- -- Jackie states she was not high that evening
- -- while in hospital:
  - -- two cops came, showed her 6-9 photos
  - -- can't remember if there was writing on the photos
  - -- cops said "Here are the guys who did it"
- -- is sure it is them because she had a good opportunity to see them
- -- Amy was her best friend
- -- (Jackie) said three people were in car
  - -- couldn't see/identify them all
- -- (before shooting) Jackie didn't hear any other conversation or anyone say anything

JR-JJ 029231

ALMODOVAR_LASSAR 10743

RG 12885