*Almodovar v. Guevara, et al.*
Case No. 18 CV 2341

*Negron v. Guevara, et al.*
Case No. 18 CV 2701

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERTO ALMODOVAR, JR., | ) | |
| | ) | Case No. 18 CV 2341 |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| vs. | ) | |
| | ) | Mag. Judge M. David Weisman |
| REYNALDO GUEVARA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| WILLIAM NEGRON, | ) | |
| | ) | Case No. 18 CV 2701 |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| vs. | ) | |
| | ) | Mag. Judge M. David Weisman |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MARK OLSZEWSKI'S MEMORANDUM IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**

.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 4

FACTS .................................................................................................................................. 5

LEGAL STANDARD.......................................................................................................... 8

ARGUMENT ....................................................................................................................... 9

I.  I. Plaintiffs Cannot Demonstrate Olszewski's Personal Involvement In The

   Conduct Underlying All Eight (8) of Their Federal and State Law Claims. ...................... 9

   a.  Olszewski was not personally involved in any alleged fabrication of evidence (Counts

      I). ........................................................................................................................... 9

   b.  Olszewski was not involved in any suppression of *Brady* material (Counts II). ........... 12

   c.  Olszewski's lack of personal involvement or significant role in the initiation of criminal

      charges against Plaintiffs requires entry of summary judgment in his favor on the

      federal and state malicious prosecution claims. ............................................................. 12

   d.  Olszewski was not personally involved in any "extreme and outrageous" conduct that

      inflicted emotional distress upon Plaintiffs.................................................................. 13

   e.  The failure to intervene claims fail against Olszewski because he did not have a

      reasonable opportunity to intervene in any suggestive identification. ........................... 14

   f.  Olszewski is entitled to summary judgment on the conspiracy claims because of the

      absence of evidence that he agreed to join an unconstitutional scheme. ...................... 15

II.  Plaintiffs Cannot Show That Olszewski's Acts Proximately Caused Their Injuries......... 16

   a.  Olszewski is entitled to Summary Judgment on the conspiracy claims for several

      reasons.................................................................................................................. 18

   b.  The Constitution does not recognize a failure to intervene tort. ................................. 22

i

CONCLUSION..................................................................................................................... 26

## **TABLE OF AUTHORITIES**

**CASE**                                                                                                          **PAGE**

*Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) ................................13

*Ashcroft v. Iqbal*, 556 U.S. 662, 676–77, (2009) ..........................................................20

*Baker v. McCollan*, 443 U.S. 137, 146 (1979)...............................................................22

*Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)................................................8, 9, 14, 15

*Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 29 (Ill. 2019) .............................7, 10, 11, 14

*Bowers v. DeVito*, 686 F.2d 616, 619 (7th Cir. 1982) ....................................................22

*Brady v. Maryland*, 373 U.S. 83 (1963).........................................................................10

*Bridewell v. Ewell*, 730 F.3d 672, 678 (7th Cir.2013)....................................................23

*Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) ......................................................21, 23, 24

*Celotex v. Catrett*, 477 U.S. 317, 322 (1986)..................................................................6

*Cnty. of L.A., Cal. v. Mendez*, 581 U.S. 420, 1548–49 (2017)......................................14

*Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) .......................................7, 14

*Coleman v. City of Peoria*, 925 F.3d 336, 344 (7th Cir. 2019) .......................................8

*Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) .............................................16, 19

*D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) ...................................................................15

*Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ................8

*Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)..............................................9

*Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) .........................12

*Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).......................................12

*Gillenwater v. Honeywell Int'l, Inc.*, 2013 IL App (4th), (Ill. App. Ct. 2013) ..............13

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, (11th Cir. 2010) .................................18

*Haliw v. City of S. Elgin, No. 19 C 01515, 2020 WL 1304697, (N.D. Ill. Mar. 18, 2020)* ...........20

*Heck v. Humphrey, 512 U.S. 477 (1994)* ...................................................................23

*Huey v. Barloga, 277 F. Supp. 864, 872 (N.D. Ill. 1967)* ..............................................21

*Jackson v. City of Cleveland, 925 F.3d 793, 819 (6th Cir. 2019)* ..................................18

*Kelly v. Hocking, No. 11 C 50024, 2014 WL 12550551, (N.D. Ill. Feb. 20, 2014)* .......................9

*Khungar v. Access Cmty. Health Network, 985 F.3d 565, 573 (7th Cir. 2021)* ...........................6

*LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 390 (7th Cir. 1995)* ...................................9, 15

*Lewis v. Mills, 677 F.3d 324, 333 (7th Cir. 2012)* ...................................................16, 19

*Logan v. City of Chicago, 891 F. Supp. 2d 897 (N.D. Ill. 2012)* .......................................8

*Menssen v. Pneumo Abex Corp., 2012 IL App (4th) 100904, (Ill. App. Ct. 2012)* .......................13

*Mitchell v. Doherty, 37 F.4th 1277, 1284 n.3 (7th Cir. 2022)* ........................................10

*Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978)* .................................20, 21, 22, 23

*Monroe v. Pape, 365 U.S. 167 (1961)* .....................................................20, 21, 24, 26

*Moran v. Calumet City, F.4th, 2022 WL 17173891, (7th Cir. 2022)* ............................................10

*Mullenix v. Luna, 577 U.S. 7, 12 (2015)* .................................................................15

*Mwangangi v. Nielsen, 48 F.4th 816, 834 (7th Cir. 2022)* ............................................20

*Orange v. Burge, No. 04 C 0168, 2008 WL 4425427, (N.D. Ill. Sept. 25, 2008)* .....................9, 14

*Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012)* .........................................6

*Patrick v. City of Chicago, 974 F.3d 824, 835 (7th Cir. 2020)* ......................................7

*Purtell v. Mason, 527 F.3d 615, 621 (7th Cir. 2008)* ...................................................16

*Richards v. U.S. Steel, 869 F.3d 557, 566 (7th Cir. 2017)* ........................................11, 14

*Scott v. City of Chi., 619 Fed. App'x 548, 548 (7th Cir. 2015)* ..................................16, 19

*Serrano v. Guevara, et. al, 315 F.Supp.3d 1026, 1043 (N.D. Ill. 2019)* ...............................9, 24

*Strauss v. City of Chi.*, 346 F. Supp. 3d 1193, 1210, 1210 (N.D. Ill. 2018) ............................18, 19

*Tabor v. City of Chi.*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998) ....................................................18

*Thompson v. Clark*, 142 S. Ct. 1332, 1337–38 (2022) ...................................................................10

*Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2014) ....................................................16, 17, 19

*Walker v. White* 2017 WL 2653078, *6 (N.D. Ill. 2017) .................................................................23

*Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968) ..................................................................................22

*White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) .................................................................6

*Wright v. Ill. Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, (7th Cir. 1994) ..............................17

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) .........................................................................21

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) ......................................................................17, 19

## **OTHER**                                                                                              **PAGE**

*Vicarious Liability*, Black's Law Dictionary (11th Ed. 2019)..................................................22, 23

## INTRODUCTION

Officer Mark Olszewski ("Officer Olszewski") was not personally involved in any of the alleged wrongful acts giving rise to Plaintiffs' claims and no reasonable jury could find him liable in these matters based on the undisputed facts. Officer Olszewski never communicated to anyone that either Almodovar or Negron should be a suspect in the Merkes/Rodriguez homicides, never questioned any eyewitness to or victims of the murders, never showed any photographs to any witness or victim, never participated in any identification procedures, never responded to the crime scene or collected physical evidence, never questioned either Plaintiff about the homicides, never communicate with prosecutors, and never testified in any criminal proceedings. Officer Olszewski is sued because he took  photographs of Almodovar on September 4, 1994, and allegedly of Negron sometime in the beginning or middle of August '94, both members of the Insane Dragons gang, and shared those with homicide detectives, who were investigating the Merkes/Rodriguez gang-related double homicide perpetrated by members of the Insane Dragons in retaliation for the murder of Insane Dragon Carlos Olan. Viewed in the light most favorable to Plaintiffs, these actions are wholly insufficient to attach liability to Officer Olszewski.

Despite his lack of involvement, Plaintiffs Almodovar and Negron each bring five (5) federal claims under 42 U.S.C. § 1983 and three (3) claims under Illinois law against Officer Olszewski:  (1) §1983 Due Process: Fabrication of Evidence (Count I); (2) §1983 *Brady* violations (Count II); (3) §1983 Malicious Prosecution (Count III); (4) §1983 Conspiracy (Count IV); (5) §1983 Failure To Intervene (Count V); (6) State Law Malicious Prosecution (Count VII); (7) Civil Conspiracy (Count

1

VIII); and (8) Intentional Infliction of Emotional Distress (IIED) (Count IX).[1] As described below, Olszewski is entitled to summary judgment on all claims.

## FACTS

In August and September 1994, the Insane Dragons and their rivals, the Maniac Latin Disciples (MLDs), were immersed in a gang war. **(SOF ¶ 9).** In the early morning of August 30, 1994, Insane Dragons member Carlos Olan was killed in a drive-by gang shooting while on a front porch at 4625 W. Palmer Street in Chicago. **(SOF ¶ 10).** Less than forty-eight hours later, on September 1 around 12:45 a.m., Amy Merkes and her friend Jackie Grande, sat on the front stoop of an apartment building at 3920 W. Cortland Street with Merkes' boyfriend, Kennelly Saez (who lived in the building) and Saez's cousin, Jorge Rodriguez **(SOF ¶ 11).** Saez and Rodriguez were both MLD members; Merkes and Grande were not gang members. **(SOF ¶ 12)**

An eastbound car carrying three occupants passed the apartment building, made a three-point-turn in a nearby alley, and drove back, now westbound, until it again reached the building, at which point the rear passenger on the driver's side called out, "What's up, folks?" **(SOF ¶¶ 13-14).** Saez responded, "Who's that?" and approached, at which point gunshots were fired from the car. **(*Id.*).** Saez dove behind a parked car and was not struck. **(*Id.*)** Merkes was shot and pronounced dead at the scene; Rodriguez was shot and died at the hospital. **(*Id.*)** Grande was shot but survived. **(*Id.*).** Chicago Police Detectives interviewed Saez at the scene **(SOF ¶ 15)** and Grande at the hospital. **(*Id.*).** Both described the incident and the perpetrators. **(*Id.*).**

In the late afternoon of September 1, 1994, Defendant Detectives Ernest Halvorsen and Reynaldo Guevara were assigned to investigate the Merkes-Rodriguez and Olan homicides.

---

[1] Negron's state law claims are numbered differently. Negron's IIED claim is set forth in Count VII, malicious prosecution in count VIII, and civil conspiracy in Count X.

(**SOF ¶ 16).** They were aware of the gang war between the Insane Dragons and the MLDs, that the two incidents occurred about seven blocks apart in a span of forty-eight hours, and that it appeared the Merkes-Rodriguez homicide was in retaliation for the Olan homicide. (***Id.***).

On September 4, 1994, Defendant Officer Olszewski and Officer Joseph Silva, both of the 25th District Gang Team, arrested four Insane Dragons including Plaintiff Almodovar at a vacant house at 2327 N. Rutherford Avenue. A citizen complained that the Insane Dragons were using the vacant home as a "clubhouse." (**SOF ¶ 18**) Almodovar's cousin, Sergio Almodovar , was charged with possession of a sawed-off shotgun, and Almodovar and two others were charged with mob action. (***Id.***). As was his practice after arresting gang members, Olszewski took Polaroid photos of the each of the four arrestees, including Almodovar, during processing following their arrest to compile data on gang members (here the Insane Dragons) . (***Id.***).

On September 5, 1994, Defendant Halvorsen contacted the 25th District Gang Team sergeant seeking information about the Insane Dragons (the gang believed responsible for the Merkes/Rodriguez homicide in retaliation for the Olan homicide). Officer Olszewski supervisor relayed Halvorsen's inquiry to him and he provided Halvorsen the Polaroid photos of the Insane Dragons taken on September 4th, which included Almodovar. (**SOF ¶ 19**). Believing that Almodovar's photo fit Grande's description, Defendants Halvorsen and Guevara showed it to Chicago Police Department (CPD) Gang Crime Specialists Joe Rodriguez and Ed Wiora, who informed them Almodovar had a friend named Willie Negron, after which Halvorsen and Guevara allegedly obtained a Polaroid of Negron from Olszewski. (**SOF ¶ 20).**[2] According to Negron, Officer Olszewski took his photo sometime in the beginning or the middle of August

---

[2] Halvorsen's report and Guevara's trial testimony reflect that they received Negron's photo from Wiora and Rodriguez, however, Wiora did not recall anything about the interactions except that he did not personally provide the photo to Guevara and Halvorsen. (SOF ¶20).

1994 before the Merkes/Rodriguez homicide. **(SOF ¶ 21.)**3

On September 5, 1994, Grande was released from the hospital after which Guevara went to her home and showed her a photo array consisting of twelve individual Polaroid photos including Plaintiffs and Nurajean Hashem, one of the Insane Dragons Olszewski arrested with Almodovar on September 4. **(SOF ¶ 22)** Grande identified Almodovar as the shooter in the back seat, and Negron as the driver who also fired a gun. **(SOF ¶ 23.).** The twelve Polaroid photographs were inventoried and disclosed to prosecutors. **(*Id.*).**

Almodovar was arrested for the Merkes/Rodriguez homicides on September 11 and Negron on September 12, 1994. **(SOF ¶ 24).** Both admitted to being Insane Dragons and to being aware of their gang's war with the MLDs. **(*Id.*).** Also on September 12, Grande and Saez separately viewed a live line-up at the Area 5 Detective Division, and both identified Almodovar and Negron as the shooters. **(SOF ¶ 25).** The Cook County State's Attorney's Office's Felony Review Unit thereafter charged Almodovar and Negron with two counts of first-degree murder. **(*Id.*).**

Prior to their criminal trials, Plaintiffs moved to suppress their identifications. **(SOF ¶ 26).** During a June 8, 1995 hearing, Grande testified to the photo array identifications made at her home on September 5, 1994, and her identification of both Plaintiffs in the September 12 live line-up. **(*Id.*).** On June 8, 1995, the court denied Plaintiffs' motion to suppress. **(SOF ¶ 28).**

Plaintiffs' jury trial began on November 28, 1995. **(SOF ¶ 29).** Grande testified and identified both Plaintiffs, to which Plaintiffs did not object. **(*Id.*).** The twelve Polaroid photos from the September 5 photo array were admitted into evidence. **(SOF ¶ 30).** Olszewski did not

---

3 Defendant Olszewski denies taking Negron's photo, but admits this fact solely for the purposes of summary judgment.

testify at any of the criminal proceedings including trial. (**SOF ¶¶ 31, 42, 43**). On November 30, both Plaintiffs were convicted of the Merkes/Rodriguez murders and the attempted murders of Grande and Saez. (**SOF ¶ 32**). Both Plaintiffs were sentenced to life in prison on February 23, 1996. (**SOF ¶ 32**).

Neither Almodovar nor Negron challenged the trial court's ruling on their motions to suppress their identifications on direct appeal. (**SOF ¶ 34**). The Illinois Appellate Court affirmed the convictions on March 9, 1999. (***Id.***). The convictions were vacated on April 14, 2017, during post-conviction proceedings, and these lawsuits followed. Plaintiffs allege that Olszewski's arrest of Almodovar and photographing of both Plaintiffs was undertaken because of Olszewski's disdain for and harassment of Hispanics in general and Almodovar in particular. (**SOF ¶ 18.**) Officer Olszewski has submitted a statement of uncontested material facts pursuant to Local Rule 56.1(a)(2) and incorporates it by reference as though fully stated herein.

## LEGAL STANDARD

Summary judgment is "'mandate[d]….against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). To overcome summary judgment, "the nonmovant must present definite, competent evidence in rebuttal." *Parent*, 694 F.3d at 922. "Speculation is not sufficient to survive summary judgment[]; there must be evidence[.]" *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) (internal citations and quotations omitted). The Court views the evidence in a light most favorable to the non-moving Plaintiffs with the benefit of reasonable, but not speculative, inferences in their favor. *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

**ARGUMENT**

**I.   I.   Plaintiffs Cannot Demonstrate Olszewski's Personal Involvement In The Conduct Underlying All Eight (8) of Their Federal and State Law Claims.**

All of Plaintiffs' federal and state law claims against Olszewski depend on proof that his personal involvement in culpable conduct warrants holding him civilly liable. *See, e.g., Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up) (holding that "[i]ndividual liability under § 1983…requires personal involvement in the alleged constitutional deprivation"); *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 29 (Ill. 2019) (cleaned up) (extending liability for state law malicious prosecution only to "persons who played a significant role in causing the prosecution of the plaintiff"). Plaintiffs' lack evidence to demonstrate Olszewski's culpable personal involvement on any of their eight (8) federal and state law claims against him.

**a.   Olszewski was not personally involved in any alleged fabrication of evidence (Counts I).**

Olszewski 's only connection to the Merkes/Rodriguez murder investigation was taking Polaroid photos Almodovar on 9/4/94 and Negron sometime in the beginning/middle of August '94 as part of his gang teamwork, and providing those photos to Detective Halvorsen after Halvorsen requested information from the 25th District gang team on known Insane Dragons. **(SOF ¶¶ 35-44.)** "The essence of a due-process evidence fabrication claim is that the accused was convicted and imprisoned based on knowingly *falsified* evidence." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (emphasis added). Plaintiffs' fabricated evidence claims allege Defendants elicited false testimony from Grande and Saez, fabricated police reports, and created unspecified "false evidence." (Almodovar Compl. ¶ 141; Negron Am. Compl. ¶ 65.) But Olszewski had no contact with any witnesses, had no involvement in eliciting

6

any statements, and did not prepare or assist in preparing any of the Merkes/Rodriguez investigative reports.

There is also no evidence that Olszewski "falsified" Plaintiffs' Polaroid photos. The Almodovar and Negron photos were true images. Plaintiffs do not claim that either photo was altered or augmented by Olszewski. Because fabricated evidence claims mandate that Plaintiffs "prove…that [the evidence] was false," the photos cannot serve as the evidence needed to sustain Counts I. *Coleman v. City of Peoria*, 925 F.3d 336, 344 (7thCir. 2019).

Undoubtedly, Plaintiffs will contend that Defendants Guevara assertions of the Fifth Amendment when asked if Olszewski obtained Plaintiffs' photos pursuant to an unconstitutional scheme to frame Plaintiffs (**SOF ¶ 45**) creates an issue of fact. This argument is a non-starter. While "the Fifth Amendment does not forbid adverse inferences against parties to civil actions," it does so only "when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer"). That inference cannot be drawn here for two reasons. First, Defendant Olszewski *did not* assert the Fifth Amendment and expressly denied that he took the photos with any knowledge that future misconduct might take place in the Merkes/Rodriguez murder investigations. (**SOF ¶ 36**.) Second, Plaintiffs have *no* probative evidence of Olszewski's involvement in any such scheme beyond Guevara and Halvorsen's Fifth Amendment invocations.

*Logan v. City of Chicago*, 891 F. Supp. 2d 897 (N.D. Ill. 2012) is instructive. There, the court granted summary judgment to two police officers even though they asserted the Fifth Amendment when asked if they had suppressed exculpatory evidence, based on the absence of

7

any other evidence of personal involvement. *Id.* at 903-904. In doing so, the court emphasized that a plaintiff must establish "a defendant's direct responsibility for the claimed deprivation of a constitutional right" (*Id.* at 903, quoting, *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981), and relied on the "Supreme Court's rule that failure to testify, alone, cannot be taken as an admission of guilt at the summary judgment stage". *Id.*at 900, citing *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995), citing *Baxter*, 425 U.S. at 318.[4]

Here, since Olszewski *did not* assert the Fifth Amendment, Plaintiffs' *only* evidence against him are the Fifth Amendment assertions of Guevara standing alone, and uncorroborated by even a shred of independent evidence that Olszewski had any knowledge of Guevara or Halvorsen's plans, actions or intent to use the photos in a suggestive photo array. (**SOF ¶¶ 35–39.**) *Baxter* teaches that any request for an adverse inference born of the Fifth Amendment should not be allowed here.[5]

Having been wholly uninvolved with any evidence that was allegedly fabricated, Olszewski is entitled to summary judgment on Plaintiffs' Counts I based on lack of personal involvement. *See Kelly v. Hocking*, No. 11 C 50024, 2014 WL 12550551, at *4 (N.D. Ill. Feb. 20, 2014) (summary judgment for defendant where plaintiff failed to "show[] that [he]was involved in the process of requesting or receiving" the allegedly false evidence).

---

[4] The court found evidence of personal involvement sufficient for a third officer who, in addition to asserting the Fifth Amendment, also arrested and previously interrogated the Plaintiff. *Id.* at 903-04.

[5] It is uncertain whether co-Defendants' third-party invocation of the Fifth Amendment can even be imputed to Olszewski in the first instance. *See Orange v. Burge*, No. 04 C 0168, 2008 WL 4425427, at *6 (N.D. Ill. Sept. 25, 2008) ("to impute a third-party's Fifth Amendment invocation to another party, the party seeking to use the invocation must establish some relationship of loyalty between the parties") (internal citation and quotations omitted). Further, Halvorsen's invocation did not even occur in this litigation, but rather during a deposition in *Serrano* and *Montanez v. Guevara* (Case Nos. 17 cv 2869 and 17 cv 4560) so Olszewski literally had no opportunity to examine him in that proceeding. Given the deference afforded non-moving parties at this stage, Olszewski concedes imputation solely for summary judgment purposes.

**b. Olszewski was not involved in any suppression of *Brady* material (Counts II).**

To establish a § 1983 claim based on a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) against Officer Olszewski, Plaintiffs must prove he intentionally or recklessly concealed favorable evidence from the prosecution that prejudiced their criminal trials. *Moran v. Calumet City*, 54 F.4th 483, 492-93 (7th Cir. 2022). Here, Plaintiff have not identified any favorable evidence to their defense that Olszweski concealed. The photographs Olszewski took were disclosed to the prosecutors and Plaintiffs. (SOF ¶ **26**.) Further, Plaintiffs knew Officer Olszewski took their photographs and that those same photos were shown to witnesses by Detectives (SOF ¶¶ **18, 21**.) Evidence known to the defense and the prosecution cannot form the basis of a *Brady* suppression claim. *Moran*, 54 F.4th at 492-98 (affirming summary judgment for police officers on § 1983 *Brady* claim where allegedly suppressed information concerning arrests was, in fact, known to the prosecutors and criminal defense attorneys from the plaintiff's original criminal trial).

**c. Olszewski's lack of personal involvement or significant role in the initiation of criminal charges against Plaintiffs requires entry of summary judgment in his favor on the federal and state malicious prosecution claims.**

Plaintiffs' federal Fourth Amendment[6] and state law malicious prosecution claims arise from the allegedly "wrongful initiation of charges without probable cause." *Thompson v. Clark*, 142 S. Ct. 1332, 1337–38 (2022) (applying federal law); *See Beaman*, 2019 IL 122654, ¶ 23 (describing state law claim as premised on a "prosecut[ion] without probable cause" of a "previous…criminal proceeding,"). Malicious prosecution liability requires a showing that

---

[6] Though both Plaintiffs alleged malicious prosecution under the Fourteenth Amendment, *Thompson v. Clark* recently reaffirmed that such claims are housed in the Fourth Amendment. 142 S. Ct. 1332, 1337–38 (2022); *see also, Mitchell v. Doherty*, 37 F.4th 1277, 1284 n.3 (7th Cir. 2022). Summary judgment should, therefore, enter for Olszewski on the Fourteenth Amendment claim.

9

Olszewski was personally, or as described in *Beaman*, "significantly" involved, in the commencement of judicial proceedings against Plaintiffs. *Id.* at ¶ 46.

As demonstrated above, Olszewski was far too removed from the decision to charge Plaintiffs for the Merkes/Rodriguez murders to satisfy the coterminous concepts of "personal involvement" under federal law or "significant role" under state law. Olszewski was not involved in the Merkes/Rodriguez homicide investigation, did not interview any witnesses or suspects, did not suggest to any detectives that Plaintiffs should be considered as suspects, did not charge Plaintiffs with any crimes associated with the Merkes/Rodriguez homicides (or shootings of the two surviving witnesses), did not ever communicate with prosecutors, let alone impact, in any way, their decision to commence judicial proceedings against Plaintiffs, and did not provide any testimony against Plaintiffs in the criminal proceedings. **(SOF ¶¶ 41-43)** The undisputed facts demonstrate that Officer Olszewski is entitled to summary judgment on the federal and state-law claims of malicious prosecution (Counts III and Almodovar's Count VII and Negron's Count VIII).

### d. Olszewski was not personally involved in any "extreme and outrageous" conduct that inflicted emotional distress upon Plaintiffs.

Illinois sets a "high bar" to "successfully assert[] a claim for" IIED which requires proof that…the defendant's conduct was truly extreme and outrageous…." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). To qualify, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Id.* (internal citation and quotation marks omitted). "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances…." *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003).

Case: 1:18-cv-02701 Document #: 194-1 Filed: 12/21/22 Page 18 of 32 PageID #:2549

Here, again, the only "misconduct" ascribed to Olszewski is taking Plaintiffs' photos[7] and providing them to investigating detectives after an inquiry seeking photographs of Insane Dragons. While Almodovar alleges these acts were born of a racial animus against him, the fact remains that for purposes of civil liability, the *actions* of taking Plaintiffs' photographs during unrelated arrests, both of whom admittedly were Insane Dragons, and providing them to homicide detectives who were investigation a double homicide committed by Insane Dragons are not so extreme and outrageous as to defy the bounds of decency in civilized society. Plaintiffs fail to establish that Officer Olszewski's conduct meets the bar high bar set under Illinois law. Summary judgment must be granted in his favor as to Plaintiffs' IIED claims in Count VII of Plaintiff Negron's complaint and County IX of Plaintiff Almodovar's complaint.

### e. The failure to intervene claims fail against Olszewski because he did not have a reasonable opportunity to intervene in any suggestive identification.

Plaintiffs allege Olszewski is liable for failing to intervene in the alleged illegal activities of Detectives Guevara and Halvorsen. A prerequisite to liability on such a claim is proof that an officer "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it"). *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Here, Olszewski did not compile the photo arrays, did not show any photos to any witnesses, was not present for the live lineups, did not create any reports in connection to the Merkes/Rodriguez homicide investigation, did not have any contact with the prosecutors and was not present for any interaction with prosecutors, and did not participate in the criminal proceedings. **(SOF ¶¶ 35-44.)** Officer Olszewski had no knowledge of any alleged plan to employ unconstitutional identification procedures. (**SOF ¶¶ 35-44**). Accordingly, he was not in a position to intervene in

---

[7] Plaintiff Almodovar's photo was taken by Defendant Olszewski on September 4, 1994 (SOF ¶ **18**), and Plaintiff Negron's photo was allegedly taken by Defendant Olszewksi in the beginning or middle of August of 1994. (SOF ¶ **21**.)

any such scheme allegedly perpetrated by Guevara and Halvorsen and he is, therefore, entitled to summary judgment on the failure to intervene claims in Counts V.

> **f.   Olszewski is entitled to summary judgment on the conspiracy claims because of the absence of evidence that he agreed to join an unconstitutional scheme.**

Under federal law, a conspiracy only arises where "defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding"—in other words, a "meeting of the minds." *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000). The same goes for Plaintiffs' state law claims, where to "recover[] under a civil conspiracy claim, the plaintiff must prove an agreement," which "must be knowingly and intentionally made." *Menssen v. Pneumo Abex Corp.*, 2012 IL App (4th) 100904, ¶ 12 (Ill. App. Ct. 2012). For the state-law claim specifically, the bar is particularly high, as "[c]ircumstantial, as opposed to direct, evidence of a conspiracy must be clear and convincing." *Gillenwater v. Honeywell Int'l, Inc.*, 2013 IL App (4th), ¶ 82 (Ill. App. Ct. 2013).

Here, there is no direct evidence that Officer Olszewski knowingly agreed to conspire with the non-moving Defendants to violate Plaintiffs' constitutional rights. Instead, and as was the case with personal uninvolvement, the *only* record evidence comes from requested Fifth Amendment imputations. While Olszewski denied that he conspired with Defendants Guevara and Halvorsen (**SOF ¶ 36**), Defendant Guevara exercised his Fifth Amendment rights when asked that question. (**SOF ¶ 45**). But as already discussed, "an adverse inference drawn against a party invoking the Fifth Amendment is ordinarily insufficient to defeat summary judgment in the absence of other independent, material and probative evidence." *Orange v. Burge*, 2008 WL 4425427 at *6. Thus, the absence of other evidence of an agreement, under *Orange*, stalls Plaintiffs' federal conspiracy claim at the starting gate. Necessarily, such a circumstantial claim

12

must fail under Illinois' more stringent clear-and-convincing standard, as well. Summary judgment should thus enter for Olszewski on Plaintiffs' federal and state law conspiracy claims.

**II.  Plaintiffs Cannot Show That Olszewski's Acts Proximately Caused Their Injuries.**

To recover under § 1983, "[P]laintiffs must demonstrate a causal connection" between the misconduct complained of and the official sued. *Colbert*, 851 F.3d at 657 (cleaned up). Plaintiffs' state-law claims also require a showing of causation. *See, e.g., Beaman*, 2019 IL 122654, ¶ 24 ("a malicious prosecution action requires proof of legal causation"); *Richards*, 869 F.3d at 566 ("[A] plaintiff may recover damages for [IIED] only if she establishes…the defendant's conduct did in fact cause severe emotional distress").

Here, the aspect of causation that is lacking is proximate cause. "Proper analysis of this proximate cause question require[s] consideration of the foreseeability or scope of the risk created by the predicate conduct." *Cnty. of L.A., Cal. v. Mendez*, 581 U.S. 420, 1548–49 (2017) (cleaned up). "[A] murky causal link between the [predicate act] and the injuries attributed to it" is insufficient to constitute reasonably foreseeable proximate cause. *Id.* at 1549.

Here, all eight (8) of Plaintiffs' federal and state law claims are premised on Olszewski's provision of Plaintiffs' photos to Guevara and Halvorsen. Yet Plaintiffs have no evidence that Olszewski had reason to foresee that Guevara intended to employ unconstitutional identification procedures, beyond their request for an adverse inference from Fifth Amendment assertions, which, as *Baxter* teaches, should not be drawn at summary judgment without further evidence. *LaSalle Bank Lake View,* 54 F.3d at 390, citing *Baxter*, 425 U.S. at 318 Thus, any alleged causal link between Olszewski's provision of the photos and the alleged constitutional violations is unsupported and summary judgment should enter for Olszewski on all of Plaintiffs' claims.

As discussed above in connection with the IIED claim, Almodovar alleges that Olszewski had previously arrested and harassed him out of the same racial and personal animus (**SOF ¶¶ 18, 27**) that motivated his arrest under false pretenses on September 4, 1994, so Olszewski could obtain Almodovar's photo for use in the Merkes/Rodriguez investigation. (**SOF ¶¶ 18, 27**.) Critically, however, Plaintiff's belief that prior bad blood between them motivated Olszewski's decision to arrest him as a ruse to take his photo is not a substitute for causation, which requires evidence that Olszewski had reason to foresee that Guevara intended to use the photos in an unconstitutionally infirm identification. There being no such evidence, Olszewski remains entitled to summary judgment.

Alternatively, qualified immunity shields Officer Olszewski from §1983 liability based on causation. Qualified immunity insulates officers from liability under §1983 unless they (1) violated a constitutional right and (2) the unlawfulness of their conduct was clearly established at the time. *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation and quotation marks omitted).

Here, qualified immunity is not a close call. Research has uncovered no case holding an officer liable in constitutional tort for anything analogous to the mere act of taking and providing a photograph to another officer who, unbeknownst to the photo-taker, later used it to perpetrate an unduly suggestive identification procedure. Qualified immunity having now been raised it is the "plaintiff [who] bears the burden of demonstrating the violation of a clearly established right." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). That means Plaintiffs need to identify authority that would have alerted Olszewski to the fact that providing the photos to Guevara

could, twenty-five years later, subject him to tort liability. Plaintiffs cannot satisfy this burden,

thus requiring summary judgment for Olszewski on all of Plaintiffs' federal claims.

### III. Alternative Reasons Support Summary Judgment For Olszewski On Plaintiffs' Conspiracy,8 Failure To Intervene, and IIED Claims.

#### a. Olszewski is entitled to Summary Judgment on the conspiracy claims for several reasons.

##### i. Federal conspiracy cannot lie where only state actors are involved.

"'To establish §1983 liability through a conspiracy, a plaintiff must demonstrate that…a

state official *and a private individual(s)* reached an understanding to deprive the plaintiff of his

constitutional rights[.]'" *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (quoting *Lewis v.

Mills*, 677 F.3d 324, 333 (7thCir. 2012)) (emphasis added). As a result, a federal "conspiracy

claim is superfluous" where "all named defendants are state actors." *Turley v. Rednour*, 729 F.3d

645, 649 (7thCir. 2014). The Seventh Circuit has expressly wed this reasoning to Plaintiffs'

theory of federal conspiracy liability, noting in a §1983 conspiracy case that where "[a]ll of the

defendants in th[e] suit…are public employees (plus their employer)…a conspiracy claim has no

role to play." *Scott v. City of Chi.*, 619 Fed. App'x 548, 548 (7th Cir. 2015).

Here, Plaintiffs name only state actors in their federal conspiracy claims, and all parties

agree that each officer "acted under color of state law and in the scope of his or her employment

while engaging in the actions alleged in th[e] Complaint." (**SOF ¶ 8**.) Because Plaintiffs lack

allegations or evidence of private co-conspirator involvement, their §1983 conspiracy theory

cannot proceed as a matter of law, and summary judgment should enter for Olszewski on Counts

IV. *See Turley*, 729 F.3d at 649 n.2 ("the function of a [federal] conspiracy claim…is to 'permit

---

8 Negron's Amended Complaint misidentifies his state law conspiracy claim as "Count VI" (¶ 115), a label he had already attached to his *Monell* claim. Since the conspiracy claim is located between Counts IX and XI (*See id.* at 28, 31–32) Count X seems to be the appropriate identifier for the claim.

recovery from a private actor who has conspired with state actors,'" such that "[w]hen, as here, the defendants are all state actors, 'a [federal conspiracy] claim does not add anything except needless complexity'") (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).

### ii. Conspiracy liability is precluded by the intracorporate-conspiracy doctrine.

Officer Olszewski cannot be held liable under a conspiracy theory because of the intracorporate-conspiracy doctrine. "Under this principle…an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). The reasoning is simple: "When two agents of the same legal entity make an agreement in the course of their official duties[,] as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people." *Id*.

The Seventh Circuit has long held that the intracorporate-conspiracy doctrine applies to §1985 conspiracy claims. *See Wright v. Ill. Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1508–09 (7th Cir. 1994) ("except in egregious circumstance, intra-entity discussions…lie outside the scope of §1985"). Our court of appeals, however, has not yet decided whether the doctrine applies to §1983. Nevertheless, Olszewski urges the Court to consider the body of recent caselaw that strongly favors applying the intracorporate-conspiracy doctrine to §1983. In particular, a 2019 opinion from the Sixth Circuit makes a convincing argument:

> When employees of a corporation act to further the purposes of [a corporation in its legal status as] "person," principles from the law of agency dictate that those employees be treated not as separate "persons" but as part of the same "person." …[T]he Supreme Court has made clear that municipalities are "persons" for purposes of §1983.
>
> Because the intracorporate conspiracy doctrine follows from the legal definition of "person," which includes local governments, the doctrine has been developed to deal with the question whether there are two separate persons to form a

16

> conspiracy. The doctrine's application to other civil rights statutes has not been premised upon any factor unique to those statutes[, so there is] no reason to decline to apply the doctrine to §1983.

*Jackson v. City of Cleveland*, 925 F.3d 793, 819 (6th Cir. 2019) (cleaned up).

A variety of courts have held much the same as *Jackson*—including the Eleventh Circuit and this Northern District, which has suggested that the Seventh Circuit's jurisprudence recommends extending the doctrine to §1983. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (intracorporate-conspiracy doctrine bars plaintiffs' §1983 conspiracy claims); *Strauss v. City of Chi.*, 346 F. Supp. 3d 1193, 1210, 1210 n.6 (N.D. Ill. 2018) (same, noting that "[m]ost courts in this district have held that [the intracorporate-conspiracy doctrine] applies to conspiracy claims under 42 U.S. § 1983" and the court has seen no "reason why the Seventh Circuit's logic [applying the doctrine to § 1985] should not apply with equal force to conspiracy claims under Section 1983"); *Tabor v. City of Chi.*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998) (same, noting that "the overwhelming majority of judges in this district…have held" that "the doctrine extends to § 1983 claims").

At its essence, *Jackson* stands for the cleareyed axiom "that members of the same legal entity cannot conspire *with one another* as long as their alleged acts were within the scope of their employment." 925 F.3d at 819 (cleaned up and emphasis in original) Here, the parties have already agreed that, at all relevant times, each Defendant "acted…in the scope of his or her employment while engaging in the actions alleged in th[e] Complaint." (**SOF ¶ 8**.) As *Strauss* predicts, the Seventh Circuit will likely follow the Sixth and Eleventh Circuit's lead in applying this axiom to §1983. Moreover, although Olszewski is unaware of any Illinois court having been asked to consider the intracorporate-conspiracy doctrine's application to state law, because the doctrine derives from universal tort principles, it should similarly apply to Illinois' conspiracy

17

regime. Therefore, based on the intracorporate-conspiracy doctrine, Olszewski should be awarded summary judgment on the federal and state law conspiracy claims.

### iii. Olszewski is entitled to qualified immunity on the federal conspiracy claims.

"When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability." *Ziglar*, 137 S. Ct. at 1868. Thus, if the Court declines to enter judgment based on the no-private-actor or intracorporate-conspiracy defenses in the first instance, qualified immunity applies to either.

As a threshold matter, each defense is plainly central to the federal conspiracy causes of action since a decision in Olszewski's favor on either defense would terminate the claims. The only remaining question is whether either issue was so resolved within the law in September 1994 that "reasonable officers in [Olszewski's] position[] would…have known with any certainty" that their actions subjected them to liability. *Id.* at 1869. As detailed above, the law quite clearly signaled the opposite, that officers were entitled to both defenses. At the least, *Turley*, *Scott*, *Cooney*, *Lewis*, and *Fairley* show that any theory of federal conspiracy liability that excludes private actor involvement is a long way away from settled law. The same goes for the intracorporate-conspiracy doctrine, where decades after the murders, Seventh Circuit courts continue to hold that the doctrine lacks the articulation in the law necessary to deprive officers of qualified immunity. *See Haliw v. City of S. Elgin*, No. 19 C 01515, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18, 2020) (police officers qualifiedly immune from § 1983 conspiracy claim because judicial "extensions of the intracorporate conspiracy doctrine to § 1983" show that "it cannot be said that the law is clearly established on this point" and "reasonable officers would not necessarily know that a conspiracy amongst employees of a single municipality can violate the Constitution (no matter what the underlying substantive right is at stake)").

Because qualified immunity is appropriate on the no-private-actor defense as well as the intracorporate-conspiracy defense, summary judgment should enter for Olszewski on Counts IV.

### b. The Constitution does not recognize a failure to intervene tort.

Recently, the Seventh Circuit called into question the viability of the "failure to intervene" theory of §1983 liability. In concurrence, Judge Easterbrook noted that "'[f]ailure to intervene' sounds like vicarious liability," which would of course be untenable, as "[t]he Supreme Court has held many times that § 1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834 (7th Cir. 2022) (Easterbrook, J., concurring) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77, (2009); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

In *Mwangangi*, Judge Easterbrook cites several decisions that recognize the failure-to-intervene tort but fail to "explain why this theory of liability is consistent with" more recent decisions "hold[ing] that our Constitution establishes negative liberties—the right to be free of official misconduct—rather than positive rights to have public employees protect private interests." 48 F.4th at 834. The concurrence surmises this is likely the result of "plaintiff[s] assert[ing] that intervention is necessary, and the defendants…not provid[ing] a substantive response." *Id*. To avoid that pitfall here, Olszewski describes just how the failure-to-intervene tort came to be in the Seventh Circuit, and why it should be rejected as an improper circumvention of the bar against vicarious liability in the §1983 regime.

"[T]he seminal case in this circuit on the duty of an officer to intervene" is *Byrd v. Brishke*, 466 F.2d 6 (7thCir. 1972). *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). *Brishke* derives from the straightforward truth that, traditionally in tort, "'where the defendant is under some affirmative duty to act and he fails to act accordingly, he may be held negligently

19

responsible for his omission.'" *Brishke*, 466 F.2d at 10 (quoting *Huey v. Barloga*, 277 F. Supp. 864, 872 (N.D. Ill. 1967)). After discussing *Monroe v. Pape*, 365 U.S. 167 (1961), where the Court clarified that this nonfeasance principle applies to §1983 torts, *Brishke* created the failure-to-intervene tort with this holding:

> [O]ne who is given the badge of authority of **a police officer may not ignore the
> *duty imposed by his office* and fail to stop other officers** who summarily punish
> a third person in his presence or otherwise within his knowledge. … [T]o
> hold otherwise would be to insulate nonsupervisory officers from liability for
> reasonably foreseeable consequences of the neglect of their duty to enforce the
> laws and preserve the peace.

466 F.2d at 11 (emphasis added).

This holding, and thus the failure-to-intervene tort, is no longer viable, if it ever should have been, for two reasons: (1) *Brishke* never, in fact, identified the constitutional source of the duty it proclaimed binds officers to intervene on third parties' behalf; and (2) as Judge Easterbrook suggested, the Supreme Court in *Monell* and *Iqbal* has since outright rejected the notion that such duty persists within the §1983 regime. Olszewski addresses each issue, in turn.

First, nowhere in *Brishke* did the Seventh Circuit identify the constitutional source of the "duty…to stop other officers." *Id.* at 11. For its explication of the intersection of §1983 and nonfeasance, *Brishke* looks to *Monroe* and the Fifth Circuit's decision in *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968). But those decisions, which home in on Fourteenth Amendment disputes, have nothing to do with where in the Constitution one might discern a duty to intervene. Indeed, *Brishke* does not even suggest that either opinion does so. Instead, when *Brishke* reaches its last paragraph, where it finally imposes this new duty to intervene, it declines to cite a single judicial opinion for support, let alone a federal statute or constitutional provision. 466 F.2d at 11.

"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146

20

(1979); *see Bowers v. DeVito*, 686 F.2d 616, 619 (7th Cir. 1982) ("the only duties of care that may be enforced in suits under section 1983 are duties founded on the Constitution or laws of the United States"). In other words, merely that third-party duties of care are a well-trodden aspect of tort law does not qualify them for enforcement via §1983; only duties housed within federal law come within §1983's ambit. The "duty…to stop other officers" has no constitutional home, as *Brishke* implicitly recognizes in failing to identify its federal source. 466 F.2d at 11.

But Olszewski cannot, and does not, ask this Court to reject Plaintiffs' failure-to-intervene claim because *Brishke* may have been incorrect when it was decided in 1972. Rather, Olszewski contends that this Court should reject the claim because *Brishke's* articulation of a failure-to-intervene theory was abrogated by the Supreme Court six years later in *Monell*. Specifically, the 1972 *Brishke* decision rested on the belief that the duty to intervene "obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed," which "***same responsibility*** must exist as to nonsupervisory officers." *Id.* (emphasis added). That is all but a textbook definition of vicarious liability, *see Vicarious Liability*, *Black's Law Dictionary* (11th Ed. 2019) (defining the term as "[l]iability that a supervisory party…bears for the actionable conduct of a subordinate or associate"), which the Supreme Court excluded from the §1983 regime in 1978, holding there is no vicarious liability for a municipal "person" under the statute. *Monell*, 436 U.S. at 691–92. The Court reaffirmed this principle in 2009, explaining that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," such that "vicarious liability is inapplicable to…§ 1983 suits." *Iqbal*, 556 U.S. at 676. *Monell* and its progeny amount to a full-scale abrogation of *Brishke's* reliance on vicarious liability principle to ensconce a failure-to-intervene tort. Accordingly, if the failure-to-intervene tort ever existed in the first place, it ceased

21

to do so when *Monell* issued in 1978, and Officer Olszewski is entitled to summary judgment on Plaintiffs' failure to intervene claims in Counts V as a matter of law.

### c. Plaintiff's IIED claim against Olszewski is time-barred.

Plaintiffs' IIED claims against Olszewski are subject to the one-year statute of limitations contained in the Illinois Tort Immunity Act, 745 ILCS 10/8-101(a). As described above, all of Olszewski's alleged conduct occurred in the first few days of September 1994, which required Plaintiffs to file their IIED claim against him by early 1995. *See, e.g., Bridewell v. Ewell,* 730 F.3d 672, 678 (7th Cir.2013) (holding that IIED claim arising from conduct that occurred in the course of an arrest accrued on the date of the arrest).

Courts have held that, based on the rule pronounced in *Heck v. Humphrey,* 512 U.S. 477 (1994), certain misconduct that occurs during an arrest does not trigger accrual of IIED claims that are based on a reversed conviction. *See, e.g., Walker v. White* 2017 WL 2653078, *6 (N.D. Ill. 2017) (Shah, J.) But that rule only applies where success on the IIED claim, if it had been filed while the conviction was intact, would have been inconsistent with the conviction. *E.g., Serrano v. Guevara, et. al,* 315 F.Supp.3d 1026, 1043 (N.D. Ill. 2019). In *Serrano*, Judge Shah found that an IIED claim was not time-barred to the extent that it alleged police misconduct which, if proven, would have been inconsistent with an intact criminal conviction**.** *Id.* However, the IIED claim was time-barred to the extent it was based on police misconduct that generated evidence that was not introduced at the criminal trial. *Id.* Here, proof that Olszewski's separate arrest of Almodovar and photographing of both Plaintiffs in 1994 caused them emotional distress would have had no impact on Plaintiffs' criminal convictions. Accordingly, the claim accrued in 1994 and is time-barred under the tort immunity act.

## CONCLUSION

Based on the foregoing, Officer Olszewski respectfully requests that summary judgment be entered in his favor on all counts.

Date: December 21, 2022.

Respectfully submitted,

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Atty No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Individual Defendants*

James. G. Sotos
Caroline P. Golden
Josh M. Engquist
Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., Suite 1240A
Chicago, IL 60604
Tel: (630) 735-3300
jengquist@jsotoslaw.com

23

<u>**CERTIFICATE OF SERVICE**</u>

I certify under penalty of perjury, pursuant to 28 U.S.C.A. § 1746, that on **Wednesday, December 21, 2022,** I electronically filed the foregoing **DEFENDANT OLSZEWSKI'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

**_Attorneys for Roberto Almodovar:_**

Jennifer A Bonjean
Ashley Blair Cohen
Bonjean Law Group, PLLC
467 Saint Johns Place
Brooklyn, NY 11238
(718) 875-1850
jennifer@bonjeanlaw.com
Ashley@bonjeanlaw.com

**_Attorneys for William Negron:_**

Arthur R. Loevy
Jonathan I. Loevy
Ruth Z. Brown
Julie Marie Goodwin
Lindsay Hagy
Rachel Elaine Brady
Sean Starr
Russell R Ainsworth
Loevy & Loevy
311 North Aberdeen
3rd Floor
Chicago, IL 60607
(312)243-5900
arthur@loevy.com
jon@loevy.com
ruth@loevy.com
julie@loevy.com
lindsay@loevy.com
Brady@Loevy.com
sean@loevy.com
russell@loevy.com

**_Attorneys for Defendant Reynaldo Guevara:_**

Thomas More Leinenweber
James Vincent Daffada
Megan Kelly McGrath
Kevin Edward Zibolski
Michael John Schalka
Leinenweber Barone & Daffada LLC
120 N. LaSalle St.
Suite 2000
Chicago, IL 60602
(847) 251-4091
jim@ilesq.com
jim@ilesq.com
mkm@ilesq.com
kevin@ilesq.com

**_Attorneys for Defendant City of Chicago:_**

Eileen Ellen Rosen
Austin Gordon Rahe
Catherine Macneil Barber
Patrick R Moran
Stacy Ann Benjamin
Theresa Berousek Carney
Rock Fusco & Connelly, LLC
321 North Clark Street, Suite 2200
Chicago, IL 60654
(312) 474-1000
erosen@rfclaw.com
arahe@rfclaw.com
cbarber@rockfuscoconnelly.com
pmoran@rfclaw.com
sbenjamin@rfclaw.com
tcarney@rfclaw.com

**Attorneys for Respondent Cook County**
**State's Attorney's Office:**

Patrick Daniel Morris
Silvia Mercado Masters
Cook County State's Attorney's Office
50 W. Washington Street
Suite 2760
Chicago, IL 60602
312.603-1426
patrick.morris@cookcountyil.gov
silvia.mercadomasters@cookcountyil.gov

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Atty No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Individual Defendants*